IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Reece Earl Ingram, | C/A No.: 3:08-1748-JFA |
| Plaintiff, | |
| vs. | ORDER |
| ABC Supply Company, Inc., and All Seasons Equipment, | |
| Defendants. | |

This matter came before the court for a hearing on December 14, 2009 on the following six motions: (1) All Seasons' Motion to Strike Plaintiff's ID of Expert Witnesses [dkt. # 42]; (2) Plaintiff's Motion to Strike All Seasons' Expert Disclosure of Anthony Dennis [dkt. # 49]; (3) Plaintiff's Motion for Partial Summary Judgment on All Seasons' Breach of Duty to Test its Product [dkt. # 44]; (4) ASE's Motion for Summary Judgment [dkt. # 50]; (5) Defendants' Joint Motion in Limine to Prohibit Treating Physicians from Giving Expert Opinion [dkt. # 58]; and (6) Defendants' Joint Motion in Limine to Prohibit Plaintiff from Introducing Videotape of Product Operation [dkt. # 63].

After considering the parties' briefs and hearing the arguments of counsel, the court ruled orally at the hearing on certain motions and took the others under advisement. This order serves to memorialize the court's rulings.

I. Factual and Procedural Background

Plaintiff Reece Earl Ingram ("Plaintiff") was injured on May 5, 2006, while working for a roofing contractor installing low-sloped, built-up roofs on condos in Florida. To transfer the hot tar to the roof, the contractor used a propane gas-fired tar kettle located on the ground, and a separate series of delivery pipes that led from the tar kettle up to the roof. The tar kettle was designed and manufactured by defendant All Seasons Equipment ("ASE") and sold by defendant ABC Supply. The series of delivery pipes were designed and manufactured by an unknown entity.

Although the tar kettle is designed to be operated from the roof, Plaintiff activated the tar kettle's flow valve from the ground such that he was beneath the roof delivery pipes. Plaintiff was burned when hot tar sprayed out of a breach in the piping onto his forearms. He was not wearing personal protective gear such as long-sleeves, gloves or a face shield.

Plaintiff filed this products liability action against ABC Supply and ASE alleging negligence, strict liability, and breach of implied warranties for a particular purpose. Central to plaintiff's claims is whether the tar kettle's flow valve—the mechanism which directs the flow of roofing tar from the kettle and into the piping system leading to the roof—was defective.

Plaintiff originally filed suit in state court, and the case was removed to this court on April 28, 2008. Soon thereafter, the court issued a scheduling order which the court amended three times at the request of the parties.

II.  Discussion

   A.  ASE's Motion to Strike Plaintiff's ID of Expert Witnesses

The Second Amended Scheduling Order dated February 10, 2009 set a deadline of March 20, 2009 for plaintiff's identification of his expert witnesses. Plaintiff filed his expert witness designation on that date, disclosing engineer Melville McCarthy as his only expert witness. ASE subsequently moved to extend the deadline for designating its experts, and the court issued a Third and Final Amended Scheduling Order on May 26, 2009, which set a deadline of August 1, 2009 (Saturday) for defendants' identification of its expert witnesses. The clerk's office incorrectly noted on the CM/ECF docket that the deadline of August 1, 2009 applied to both plaintiff and defendants experts, although the order itself clearly noted the extension applied only to defendants.

Despite the deadline for identifying his expert having passed more than four months earlier, and despite his failure to seek an extension of the deadline, plaintiff claims that he "inadvertently believed that the Court had granted an extension of time to both sides" on account of the clerk's office entry on the CM/ECF docket. Rather than seek a clarification of what he perceived as an ambiguity on the docket, Plaintiff filed Supplemental Expert Disclosures on August 3, 2009, identifying two previously-undisclosed experts, James Steven Hunt, a roofing expert, and Cheryl Mathis, a life care planner. ASE moved to strike plaintiff's designation of Hunt and Mathis as untimely and prejudicial.

The clear purpose of Rule 26(a) is to enable a party to determine, test, and assess the

3

opinions of disclosed experts so that it can properly prepare its case in response, with Rule 37(c)(1) providing that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). As defendants do not have any opportunity to identify counter-experts, they argue that the court should strike Plaintiff's Supplemental Expert Disclosures of Hunt and Mathis. The court agrees and grants the motion to strike.

B. Plaintiff's Motion to Strike ASE's Expert Disclosure of Anthony Dennis

The Third and Final Amended Scheduling Order set a deadline of August 1, 2009 for all of defendants' experts. However, Plaintiff argues that because ASE's motion to extend the deadline for designating its experts requested more time on account of not having received Plaintiff's complete medical records, that the court's issuance of the subsequent Third and Final Amended Scheduling Order should be read to have limited the types of expert that the extension applied to as solely medical experts. Aside from its medical expert, ASE named as experts engineer David A. Danaher and roofer Anthony B. "Pete" Dennis.

Plaintiff argues that the designation of Dennis should be barred as falling outside the medically-related information. ASE retorts that the expert deadline was extended generally, and not specifically for medically-related experts only. Additionally, ASE argues that the designation of Dennis does not prejudice Plaintiff because Dennis is merely substituting for a previously-disclosed commercial roofing contractor expert, Sid Glasgow of Glasgow

4

Roofing Company, Inc. ASE argues that it makes no difference who the roofing contractor expert is because plaintiff chose not to depose the originally-disclosed roofing expert during discovery and cannot now complain of any prejudice.

The court finds that its order extended the deadline for all of ASE's experts and that the substitution of one expert for another previously-disclosed expert in the same field does not work any prejudice on plaintiff, especially where he did not choose to depose the original expert. Therefore, the court denies the motion to strike All Season's non-medical experts.

    C.    Plaintiff's Motion for Partial Summary Judgment on ASE's Breach of Duty to Test its Product

Plaintiff moves for partial summary judgment on ASE's alleged breach of its duty to test the valve in the tar kettle. This lawsuit alleges, inter alia, that ASE is strictly liable under the South Carolina Defective Products Act, S.C. Code Ann. § 15-73-10, and also that ASE was negligent and therefore liable for Plaintiff's damages arising from his use of the tar kettle.

Under South Carolina law, ASE has a duty to test its tar kettle products. See Nelson v. Coleman Co., 155 S.E.2d 917 (S.C. 1967) (noting the "general rule that manufacturers have a duty to test and inspect their products"). Plaintiff argues that Antonio Leal, ASE's 30(b)(6) witness, admitted that the flow valve, which is the allegedly defective component of the tar kettle, was not tested prior to its release into the stream of commerce. Specifically, the deposition testimony states: "You can't test it. You can't put asphalt through it. Because that would be considered a used piece of equipment." (Leal Dep. 121: 7–11). Plaintiff

claims ASE's rationale regarding the impossibility of testing the product does not satisfy the duty of a manufacturer to the consumer to test a product before releasing into the stream of commerce.

ASE argues that it did test the tar kettle and its safety flow valve, as is its routine with all new products in the product's normal operating conditions and environment. For support, ASE points to the testimony of Leal, who states that when ASE developed its tar kettle thirty years ago, the company "selected a contractor, with extensive knowledge of roofing kettles, to use/test the product in normal operating conductions (e.g. to run roofing tar through the kettle), and to report to ASE about the roofing kettle's design, safety, durability, and usefulness." Id. at ¶8. ASE maintains that it continues to utilize the same design and specifications for the roofing kettle as the one tested by the contractor thirty years ago and that it"cannot test each roofing kettle by running roofing tar through it because the use of tar in the roofing kettle renders the roofing kettle a used and dirty piece of equipment. Id. at ¶ 9.

The court finds that summary judgment is not appropriate on ASE's alleged failure to test its product. Although ASE does not test each new roofing kettle by running roofing tar through it, there is substantial evidence that it tests and inspects its roofing kettles and the safety flow valves. The court finds that whether ASE's testing and inspection of the roofing kettle and the safety flow valve satisfied "the standard of the reasonable" roofing kettle manufacturer is a jury question.

6

Therefore, the court denies Plaintiff's motion for partial summary judgment on ASE's alleged breach of its duty to test its product without prejudice to renew during the course of trial.

D. ASE's Motion for Summary Judgment

ASE moves for summary judgment on the grounds that Plaintiff's claims fail as a matter of law because he cannot establish that the tar kettle was defective, or that the tar kettle's alleged defect proximately caused his injuries. ASE also contends that Plaintiff's breach of implied warranty for fitness for a particular purpose claim must fail because Plaintiff cannot establish that the buyer of the tar kettle purchased the product for a particular purpose. Next, ASE argues with respect to Plaintiff's negligence claim that the evidence establishes that Plaintiff's comparative negligence far outweighs any alleged negligence on the part of ASE. Also, to the extent Plaintiff aims to recover medical expenses he incurred following his Florida burn treatment, ASE argues his damages claim fails because Plaintiff has produced no expert testimony on the causal connection between these medical costs and the tar kettle.

With respect to ASE's initial argument that the tar kettle's alleged defect did not proximately cause Plaintiff's injuries, the court finds that a genuine issue of fact exists as to the cause of the tar spraying. Although it is undisputed that the tar sprayed from the breach in the piping, a question of fact remains as to whether the tar would have sprayed independently of the alleged valve malfunction. Additionally, viewing the facts and

inferences therefrom in the light most favorable to Plaintiff, conflicting testimony exists as to whether or not the Plaintiff was burned by the tar spray before the valve allegedly failed to operate as he intended. Therefore, summary judgment on the proximate cause issue is inappropriate.

Next, ASE alleges that the tar kettle was not defective and operated as it was designed to operate. Again, the court is constrained to deny summary judgment, as a question of fact exists as to whether the tar would have sprayed independently of the alleged valve malfunction.

With regard to Plaintiff's breach of implied warranty for fitness for a particular purpose, the court finds that Plaintiff has not established that the buyer of the tar kettle purchased it for a particular, non-ordinary purpose. Therefore, the court grants summary judgment on defendant's motion as to Plaintiff's claim for breach of implied warranty for fitness for a particular purpose.

Next, ASE argues that Plaintiff's comparative negligence far outweighs any alleged negligence on the part of ASE. In a negligence action, a plaintiff may only recover damages if his own negligence is not greater than that of the defendant. "If the sole reasonable inference that may be drawn from the evidence is that the plaintiff's negligence exceeded fifty percent, the . . . court may determine judgment as a matter of law in favor of the defendant." Bass v. Gopal, Inc., 2009 WL 1917283, *4 (S.C. App. July 1, 2009).

ASE argues that Plaintiff's comparative negligence exceeds fifty percent because (1)

8

he improperly operated the tar kettle, he disbursed tar without an inspection of the roof delivery piping's assembly, and he failed to wear personal safety equipment, and (2) he assumed the risk that the roofing kettle's safety valve would stick when he operated the kettle pursuant to his employer's incorrect roofing procedure. The court finds the question of contributory/comparative negligence is ordinarily a question of fact for the jury and only rarely becomes a question of law for the court, usually only in the clearest of cases. Although defendants can cite to multiple instances of Plaintiff's negligence in his use and operation of the tar kettle, the court finds the issue sufficiently close to go to the jury. Therefore, the court denies summary judgment on comparative negligence.

Finally, ASE argues that summary judgment is warranted to the extent Plaintiff seeks to recover medical expenses he incurred after his Florida burn treatment for his failure to produced expert testimony establishing the causal connection between these medical costs and the tar kettle. Expert testimony is not required to prove proximate cause "if the common knowledge or experience of laypersons is extensive enough to determine the presence of the required causal link between the medical treatment and the patient's injury." Phillips v. Morbark, Inc., 481 F.Supp.2d 461, 465 n.2 (citing Bramlette v. Charter-Medical-Columbia, 393 S.E.2d 914, 916 (S.C. 1990)). The court agrees with Plaintiff in the present case that the ordinary layperson is capable of determining the causal link between Plaintiff's burn injuries and his subsequent treatment, especially with the benefit of Plaintiff's treating physicians' testimony. Therefore, the court denies summary judgment on this issue.

To the extent that the court denies ASE's motion for summary judgment herein, such denial is without prejudice and leave to renew during the course of trial if warranted.

E. Defendants' Joint Motion in Limine to Prohibit Treating Physician from Giving Expert Opinion

Defendants filed a joint motion in limine to prohibit Plaintiff's treating physicians from giving expert opinions because plaintiff did not list them as expert witnesses as required by Rule 26(a)(2)(A). Defendants argue that the court should limit Plaintiff's treating physicians to testifying about the facts of their past treatment and observation of Plaintiff, and forbid them from opining about Plaintiff's medical condition, medical costs, diagnosis, prognosis, medical necessity, medical causation, or treatment.

At the motions hearing on December 14, 2009, the court stated that it felt somewhat constrained from granting the Motion in Limine because of its Order on treating physician exclusion in *Waldron v. Belk*, C.A. No. 03:07-2736-JFA [dkt #119]. However, after the hearing, defendants filed a motion for reconsideration [dkt #69], pointing out that the court's recollection of the *Waldron* order differs significantly from the procedural posture of this case. The court has serious reservations about its oral ruling on the motion in limine, and therefore advises counsel that it will keep under advisement the motion for reconsideration until plaintiff files his response no later than January 4, 2001.

F. Defendants' Joint Motion in Limine to Prohibit Plaintiff from Introducing Videotape of Product Operation

Defendants filed a joint motion in limine to prohibit Plaintiff from introducing into

10

evidence a post-incident videotape which allegedly demonstrates the movement of the flow valve on the tar kettle at issue in this case because it is irrelevant, overly prejudicial, inaccurate, lacking appropriate safeguards for reliability, misleading and confusing.

The Fourth Circuit has recognized the "unique problems presented by the introduction of videotapes purporting to recreate events at the focus of a trial." Hinkle v. City of Clarksburg, 81 F.3d 416, 425 (4th Cir. 1996). Therefore, it established a requirement that video taped evidence purporting to recreate events at issue must be "substantially similar to the actual events to be admissible." Id.

In the present case, defendants argue there is no similarity in the conditions and circumstances of the tar kettle valve demonstration in the Videotape and the operation of the tar kettle at the time of the May 5, 2006 incident. Defendants submit that the tar kettle had been used repeatedly with the flow valve operating without injury, but that it sat idle for many months before the demonstration in 2008. In addition, defendants argue that at the time of the injury in 2006, the tar kettle was in daily use in Florida with an entire crew of roofers attending to its operation, who would have prepared the tar kettle for daily operation, including inspections, and heating and maintaining fresh tar within a specified temperature range. On the other hand, the videotape demonstration does not document (1) the appropriate preparation; (2) the use of the same type of fresh tar; (3) the appropriate warm up of the tar and kettle components; (4) the proper temperature range during the demonstration and/or; (5) the assembly of the tar kettle piping. Defendants argue each of these differences,

individually and together, show that the demonstration video is substantially dissimilar from the conditions and circumstances that existed at the time of the Plaintiff's injury.

The court is not persuaded that the conditions in the videotape are sufficiently close to those of the accident to make its probative value outweigh its prejudicial effect. Id. Specifically, the court is concerned that the videotape appears to be inconsistent with prior witness and expert testimony, as the tar kettle valve sticks every single time in the videotape, unlike in Plaintiff's deposition, where he testified that the flow valve mechanism functioned properly 60% of the time. In addition, Plaintiff's expert, Mr. McCarthy, testified in his deposition that he operated the tar kettle flow valve numerous times and it performed perfectly every time but one.

The court finds the inconsistency between the video demonstration and the testimony of Plaintiff and his expert to be significant. Because the film does not portray the "original facts in controversy, but rather represents a staged reproduction of one party's version of those facts," the court finds the danger of the jury confusing "art with reality is particularly great." Clark v. Cantrell, 529 S.E.2d 528, 536 (S.C. 2000).

Therefore, the court grants the motion to prohibit the videotape of the product operation.

III. Conclusion

For the foregoing reasons, the court: (1) grants ASE's Motion to Strike Plaintiff's ID of Expert Witnesses [dkt. # 42]; (2) denies Plaintiff's Motion to Strike ASE's Expert

Disclosure of Anthony Dennis [dkt. # 49]; (3) denies without prejudice Plaintiff's Motion for Partial Summary Judgment on ASE's Breach of Duty to Test its Product [dkt. # 44]; (4) denies without prejudice Defendants' Motion for Summary Judgment [dkt. # 50]; and (5) grants Defendants' Joint Motion in Limine to Prohibit Plaintiff from Introducing Videotape of Product Operation [dkt. # 63].

       IT IS SO ORDERED.

December 23, 2009　　　　　　　　　　　　Joseph F. Anderson, Jr.
Columbia, South Carolina　　　　　　　　　United States District Judge